UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER M. ALLEN,   Plaintiff, | :  : CIVIL ACTION NO.  : 3:20cv279 (AWT) |
| v. | :  : |
| CHERYL L. CEPELAK, et al.,   Defendants. | :  : |

## RULING ON MOTION TO DISMISS

The plaintiff, Christopher Allen, a sentenced inmate[1] in the custody of the Department of Correction ("DOC"), filed this civil rights action under 42 U.S.C. § 1983 against DOC Deputy Commissioner Cheryl Cepelak, DOC District Administrator William Mulligan, DOC Religious Services Director Williams ("Dr. Williams"), and MacDougall-Walker Correctional Institution ("MacDougall-Walker") Warden Kristine Barone. (Doc.#1) Allen claims that he has been denied his rights under the First and Fourteenth Amendments to the United States Constitution; the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA); Article First, § 3 of the Connecticut Constitution; and Connecticut General Statutes § 52-571(b). Id. Allen has sued the defendants in their individual capacities for damages

---

[1] The DOC website shows that Allen was sentenced on February 25, 2010, and he is serving a sentence of thirty-two years. See Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012) (the court may "take judicial notice of relevant matters of public record.").

1

and in their official capacities for injunctive and declaratory relief.  Id.  After initial review, the court permitted all of Allen's claims to proceed against Deputy Commissioner Cepelak, District Administrator Mulligan, Dr. Williams, and Warden Barone. (Doc.#8).

The defendants have filed a motion to dismiss on the basis of qualified immunity with respect to Allen's First Amendment claims based on: the defendants' denial of Allen's request to have access to and possess a burgundy fez; and the defendants' denial of his request for religious services for his religion of Islamism.[2]  Allen has filed opposition briefs to the motion to dismiss.  (Docs.##41, 46).

The motion to dismiss will be granted in part and denied in part.

## I. LEGAL STANDARD

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

---

http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=317818.

[2] The defendants' qualified immunity arguments do not appear to address Allen's First Amendment claim based on the defendants' failure to recognize his religion while recognizing other religions, and his Fourteenth Amendment claim based on the defendants' failure to recognize his religion and their use of state funds to support other religious communities but failure to do so for Islamism.  See (Doc.#1 at 18).

2

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557).

Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. Id. (citing Twombly, 550 U.S. at 555). Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the nonmovant's favor." Interworks Sys. Inc. v. Merch. Fin. Corp., 604 F.3d 692, 699 (2d Cir. 2010). "[D]ocuments outside the complaint are generally off-limits on a motion to dismiss," unless they are incorporated in the complaint by reference, integral to the complaint, or matters of which the court can take judicial notice. See Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016).

Although a pro se complaint must be liberally construed "to raise the strongest arguments it suggests," pro se litigants are

nonetheless required to "state a plausible claim for relief." Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (brackets and internal quotation marks and citations omitted). So too must a pro se litigant be able "to allege facts demonstrating that her claims arise under this Court's ... jurisdiction." Gray v. Internal Affairs Bureau, 292 F. Supp. 2d 475, 477 (S.D.N.Y. 2003). Absent such a showing the "complaint must be dismissed." Id. (citing Fed. R. Civ. P. 12(h)(3)).

## II. FACTUAL ALLEGATIONS

Allen is a devout Moorish-American member of the Moorish Science Temple of America. (Doc.#1 at ¶ 24). His religion is Islamism, the official religion of the Moorish Science Temple of America. Id. at ¶ 25. It is a fundamental tenet of Islamism that all male adherents must cover their heads with a burgundy fez. Id. at ¶ ¶ 26-27. The burgundy fez must be purchased from the Temple or a Temple-approved vendor. Id. at ¶ 36. The Temple does not sell any fez that is not the color burgundy. Id. at ¶ 37.

As a devout follower of the religious laws set forth by the Prophet Noble Drew Ali (founder of the Moorish Science Temple of America), Allen is obligated to publicly proclaim that he is a member of the Moorish Science Temple of America and that his religion is Islamism; id. at ¶ 42; he is no more able to

4

disregard the burgundy fez mandate than a Catholic would be to disregard a Papal edict.  Id. at ¶ 39.

Allen is not a member of any gang or other criminal element with which the color burgundy could be associated.  Id. at ¶ 28. Nor has he been accused of being involved in gang activity.  Id. at ¶ 29.  Pursuant to DOC policy, suspected gang members are separated from the general population and housed in segregated Restrictive Housing Units ("RHU").  Id. at ¶ 30.  However, Allen is housed in general population and has no contact with prisoners in RHU.  Id. at ¶ 31.

Allen filed a prior action under Docket Number 3:18-cv-297 (JCH), which was dismissed without prejudice for failure to exhaust his administrative remedies.  Id. at ¶¶ 16-18.  As he alleged in that prior action, Allen has requested permission to purchase a burgundy fez for several years, but his request has been continually denied.  Id. at ¶ 32.

On October 24, 2018, District Administrator Mulligan denied Allen access to a burgundy fez in response to his Level I Administrative Remedy Form.  Id. at ¶ 33. On January 16, 2019, DOC Deputy Commissioner Cepelak also denied his request for access to a burgundy fez in response to his Level III Administrative Remedy Form.  Id. at ¶ 34.

The defendants have denied Allen his request for access to

a burgundy fez based on a vague and unsupported claim that a burgundy fez poses "an unspecified risk to an unspecified safety and security concern." Id. at ¶ 35. The religious fez worn by practicing male members of the Moorish Science Temple of America must be purchased directly from the Temple or through a Temple-approved vendor. Id. at ¶ 36.

On August 21, 2019, Allen wrote to Dr. Williams requesting recognition as a practitioner and adherent to the tenets of Islamism; he also requested establishment of a schedule for services on Fridays and Sundays in accordance with the tenets of Islamism. Id. at ¶¶ 45, 51. Dr. Williams responded by dismissing Allen's request and suggesting Allen (who is not a Muslim) should participate in Muslim services. Id. at ¶¶ 45, 52. On September 9, 2019, Warden Barone responded to Allen's Level I Administrative Remedy Form with the false assertions that Islamism is not a religion and that it has no correlation to the Moorish Science Temple. Id. at ¶¶ 43-44.

On September 26, 2019, District Administrator Mulligan responded to Allen's Level II Administrative Remedy Form by stating: "The response given by Warden Barone was thorough and complete." He also indicated that Allen had exhausted his administrative remedies. Id. at ¶ 47.

Due to their refusal to recognize Islamism as Allen's

6

religion, the defendants did not entertain Allen's requests to observe Islamism religious holidays, attend Islamism worship services, and follow the teachings of Islamism. Id. at ¶ 49.

To date, the defendants continue to deny him access to the burgundy fez based on reasoning that the burgundy fez poses a safety and security concern. Id. at ¶ 35.

With approximately 20 adherents at MacDougall-Walker, Islamism has community of similar size to those of other religious communities at MacDougall-Walker for whom services are provided. Id. at ¶ 53. The defendants use state monies to hire clergy, purchase food and worship items, and provide support for religious communities of similar size; however, the defendants have refused to permit Allen to observe the holiday and customs of Islamism, and they have failed to recognize Allen's religion of Islamism. Id. at ¶¶ 60-61.

### III. DISCUSSION

#### A. Qualified Immunity

Qualified immunity "protects government officials 'from liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "'Qualified immunity'

7

protects an official from liability under federal causes of action but is not generally understood to protect officials from claims based on state law." Jenkins v. City of New York, 478 F.3d 76, 86 (2d Cir. 2007).

Qualified immunity "affords government officials 'breathing room' to make reasonable—-even if sometimes mistaken—-decisions." Distiso v. Cook, 691 F.3d 226, 240 (2d Cir. 2012) (quoting Messerschmidt v. Millender, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" Grice v. McVeigh, 873 F.3d 162, 166 (2d Cir. 2017) (quoting Amore v. Novarro, 624 F.3d 522, 530 (2d Cir. 2010)).

To deny an official the protection of qualified immunity, the plaintiff must plead facts that satisfy two requirements. First, the facts alleged or shown by the plaintiff must state a violation of a statutory or constitutional right by the official and, second, they must establish that the right was clearly established at the time of the challenged conduct. See Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citation omitted). The district court has the discretion to determine, in light of the particular circumstances surrounding the case, which of the two prongs of the qualified immunity standard to address first. See

Johnson v. Perry, 859 F.3d 156, 170 (2d Cir. 2017) (quoting Pearson, 555 U.S. at 236).

Under the second prong, a right is clearly established if, "at the time of the challenged conduct ... every 'reasonable official would have understood that what he is doing violates that right.'" al-Kidd, 563 U.S. at 731 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Although there is no requirement that a case have been decided which is directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." Id.

In determining whether the right is clearly established, the district court looks to case law from the Supreme Court and the Courts of Appeals. See Terbesi v. Torreso, 764 F.3d 217, 231 (2d Cir. 2014). District court decisions do not constitute clearly established law. See Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011) (internal citations omitted); see also Brown v. City of New York, 862 F.3d 182, 190 (2d Cir. 2017) ("No precedential decision of the Supreme Court or this Court 'clearly establishes' that the actions of [the defendants], viewed in the circumstances in which they were taken, were in violation of the Fourth Amendment.").

Moreover, "a broad general proposition" does not constitute a clearly established right. Reichle v. Howards, 566 U.S. 658,

9

665 (2012). The constitutional right allegedly violated must be established "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." Id. (quoting Anderson, 483 U.S. at 640); see also White v. Pauly, ___ U.S. ___, 137 S. Ct. 548, 552 (2017) (quoting al-Kidd, 563 U.S. at 742) ("'clearly established law' should not be defined 'at a high level of generality.'"); City of Escondido v. Emmons, ___ U.S. ___, 139 S. Ct. 500, 503 (2019)("Under our cases, the clearly established right must be defined with specificity. 'This Court has repeatedly told courts … not to define clearly established law at a low level of generality.'" (quoting Kisela v. Hughes, ___ U.S. ___, 138 S. Ct. 1148, 1152 (2018) (per curiam))). The legal principle at issue "must clearly prohibit the officer's conduct in the particular circumstances before him." District of Columbia v. Wesby, ___ U.S. ___, 138 S. Ct. 577, 590 (2018).

In addition, qualified immunity protects government officials when it was objectively reasonable for them to believe that their conduct in the particular factual context at issue did not violate a clearly established right. See Manganiello v. City of New York, 612 F.3d 149, 165 (2d Cir. 2010). "If a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability."

Ziglar v. Abbasi, 137 S. Ct. 1843, 1867 (2017). Qualified immunity does not apply "if, on an objective basis, it is obvious that no reasonably competent officer" would have taken the actions alleged. Malley v. Briggs, 475 U.S. 335, 341 (1986).

The court may consider a qualified immunity defense on a motion to dismiss if "the facts supporting the defense appear on the face of the complaint." McKenna v. Wright, 386 F.3d 432, 435-36 (2d Cir. 2004). "[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept [that] . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." Id. at 436.

1. **Burgundy Fez**

The court's initial review order held that Allen had sufficiently stated that the defendants had plausibly violated his First Amendment rights by substantially burdening exercise of his sincerely held religious beliefs by denying him access and permission to wear his religious headwear, the burgundy fez. (Doc.#8 at 9).

In the instant case, the right at issue is not the broad and general proposition that a prisoner has the First Amendment

11

right to the free exercise of his or her religion subject to restrictions relating to legitimate penological concerns. See Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003). Instead, the more specific right at issue is whether Allen had the First Amendment right to wear his religious headwear in light of the penological concerns for safety and security. See Richard v. Strom, 3:18cv1451 (CSH), 2019 WL 2015902 at *4 (D. Conn. May 7, 2019) (considering qualified immunity defense to First Amendment claim that inmate had right to possess fez consistent with his religion). The defendants argue that Circuit courts, including the Second Circuit, have upheld prison restrictions on religious headgear as necessary for safety and security reasons. See Benjamin v. Coughlin, 905 F. 2d 571, 579 (2d Cir. 1990) (upholding restriction on Rastafarian headwear of crown for safety and security reasons; and noting that crowns (as opposed to yarmulke and kufis) pose heightened security concern due to their size and ability to be used for secreting contraband, and that district court concluded that "yarmulkes and kufis are smaller and fit closely to the head, while the crown is of a size and shapelessness which would facilitate uses which are legitimately forbidden.").[3]

---

[3] See also Portley-El v. Zavaras, 188 F.3d 519 (10th Cir. 1999) (holding that restricting the wearing of a fez at work by a practicing member of Moorish Science Temple of America to be "entirely

Here, the complaint alleges that the defendants stated "an unspecified risk to an unspecified safety and security concern." (Doc.#1 at ¶ 35). As the face of the complaint provides no information about the asserted penological safety and security concerns raised by Allen having access to and wearing a burgundy fez (and the defendants' motion to dismiss does not attach the decisions denying Allen's request), the court cannot assess whether there is a clearly established right under similar circumstances, or whether the defendants would not reasonably understand that their decision to deny Allen's burgundy fez request violated a constitutional right. See Nicholas v. Tucker, 40 F. App'x 642, 643 (2d Cir. 2002) (unpublished) (affirming district court decision on motion for summary judgment that correctional officer was entitled to qualified immunity as he could reasonably conclude that interference with

---

appropriate" because headgear can pose security threat as it can be used to conceal drugs, weapons, and contraband)(unpublished opinion); Muhammad v. Lynaugh, 966 F.2d 901, 902-03 (5th Cir. 1992) (upholding regulation restricting Muslim inmates' wearing of kufi caps as evidence showed that weapons could be secreted in the caps and could cause problems with inmate interaction); Young v. Lane, 922 F.2d 370, 375-77 (7th Cir. 1991) (sustaining prison prohibition on wearing yarmulkes in prison's general population where evidence showed that restrictions on headwear limited inmate gang identification in prison environment and yarmulkes were permitted during religious services and in cells); Standing Deer v. Carlson, 831 F.2d 1525, 1528 (9th Cir. 1987) (upholding no-headwear policy as reasonably related to cleanliness, security, and safety); Butler-Bey v. Frey, 811 F.2d 449, 451 (8th Cir. 1987) (rejecting inmate's claim that prohibition on wearing of fez in prison visiting room, dining room, chapel, school and administration building violates First Amendment due to potential threat of carrying contraband in fez).

wearing of headgear at work would not violate inmate's constitutional rights where inmate's kufi was sufficiently loose to permit concealment of a weapon or contraband and inmate's work place was less secure than inmate's usual quarters); Nicholas v. Tucker, No. 95 CIV. 9705(LAK), 2001 WL 228413, at *2 (S.D.N.Y. Mar. 8, 2001).

Accordingly, the qualified immunity analysis necessary for this claim requires more factual development; the court can more appropriately consider this defense on a motion for summary judgment. The motion to dismiss will be denied because the factual record is, at present, not sufficient.

### 2. Religious Services

The court permitted to proceed beyond initial review Allen's First Amendment claim based on the defendants' denial of his requests for religious observances, services and festivals for his religion of Islamism practiced by members of the Moorish Science Temple of America. (See Doc.#8 at 11-14). The defendants maintain that they are entitled to qualified immunity because both the Supreme Court and the Second Circuit have upheld the denial of separate religious services for inmate groups based on security and other penological concerns.

In O'Lone v. Estate of Shabazz, the United States Supreme Court considered a First Amendment challenge based on prison

14

policies that prevented the plaintiff-inmates from being able to attend weekly Muslim congregational services because they were required to work outside the building where the services were conducted and prison policies precluded them from returning except for emergencies; the Supreme Court held that the First Amendment was not violated because the prison regulations reasonably related to legitimate penological objectives.  482 U.S. 342, 345-347, 351-353 (1987).  In so holding, the Supreme court upheld as valid penological security concerns the prison officials' determinations that accommodations for the Muslim inmates assigned to outside work would "threaten prison security by allowing 'affinity groups' in the prison to flourish," facilitate "an organizational structure that will invariably challenge the institutional authority," and "create problems" as other inmates "perceive favoritism" because of the special arrangements.  Id. at 352-353.

    The Second Circuit upheld as constitutional a New York correctional requirement that permitted inmate religious groups to congregate for religious observance only under the supervision of a non-inmate spiritual leader known as a "free-world sponsor."  Benjamin, 905 F.2d at 577.  In Connecticut, inmates are subject to a similar restriction contained in DOC Administrative Directive 10.8(6), which requires  that "[a]ll

collective religious activity shall be conducted and supervised by a Department authorized chaplain or religious volunteer who professes the same religion as the group gathering together. An inmate may not conduct a collective religious activity under any circumstances."

In Vega v. Lantz, No. 304CV1215(DFM), 2009 WL 3157586, at *9 (D. Conn. Sept. 25, 2009), the court concluded that DOC's restriction on inmates' ability to lead services does not violate the First Amendment "because inmate leadership of any sort tends to create an alternate authority structure within the prison system." Id. at *9 (internal quotation omitted).

The defendants assert that Allen has not alleged that his group of Islamism practitioners have a bona fide and qualified volunteer who could be approved to supervise and conduct collective religious services for his religion. Thus, the defendants maintain, no reasonable prison official would know that there was a clearly established right to separate services for inmates who practice Islamism in light of established Supreme Court and Second Circuit precedent. Allen's opposition materials do not refute that he has failed to allege the existence of a bona fide and qualified volunteer who could be approved to supervise and conduct collective religious services for his religion of Islamism.

16

Because an inmate has no clearly established constitutional right to religious services under circumstances similar to those here, the defendants are entitled to qualified immunity on Allen's First Amendment claim relating to denial of religious services for his religion of Islamism, as alleged in the complaint.

**IV.   CONCLUSION**

Based on the foregoing, Defendants' Motion to Dismiss (ECF No. 20) is DENIED in part and GRANTED in part.  The defendants' motion is granted as to Allen's First Amendment claim based on the denial of his request for religious services for his religion of Islamism, and the defendants are entitled to qualified immunity as to that claim.[4]  The motion to dismiss is denied as to Allen's First Amendment claim relating to the burgundy fez.

It is so ordered.

---

[4] If Allen can allege that he requested religious services and that there is a bona fide and qualified volunteer who could be approved to supervise and conduct collective religious services for his religion, he may file, within 30 days of this ruling, an amended complaint. Allen is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.

17

Signed at Hartford, Connecticut, this 25th day of February 2021.

>            _____/s/AWT_____
>                  Alvin W. Thompson
>             United States District Judge